UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
                                                             :
NICOLE M. PROSA,
                                                             :
                    Plaintiff,                                    OPINION & ORDER
                                                             :    23 Civ. 8852 (GWG)
            -v.-
                                                             :

COMMISSIONER OF SOCIAL SECURITY,                             :

                    Defendant.                               :

-------------------------------------------------------------x
**GABRIEL W. GORENSTEIN, United States Magistrate Judge**

        Plaintiff Nicole Prosa brought this action pursuant to 42 U.S.C. § 405(g) to obtain

judicial review of the June 15, 2023 decision of the Commissioner of Social Security

("Commissioner") denying her application for disability insurance benefits under the Social

Security Act.  Prosa has moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).[1]

For the reasons that follow, Prosa's motion is granted and the case is remanded to the

Commissioner for further proceedings.

I. BACKGROUND

        A.  Procedural History

        On August 24, 2018, Prosa made her application for benefits, alleging that she was

disabled as of January 1, 2015, due to a left knee injury, right knee pain, right and left hip pain,

and adjustment disorder.  See Social Security Administration ("SSA") Administrative Record,

filed Dec. 11, 2023 (Docket # 9) ("R."), at 192, 268.  The claim was initially denied on

---

[1]  See Notice of Motion for Judgment on the Pleadings, filed Mar. 12, 2024 (Docket #
13); Plaintiff's Memorandum of Law in Support, filed Mar. 12, 2024 (Docket # 14) ("Mem.");
Commissioner's Brief in Opposition, filed May 9, 2024 (Docket # 16) ("Opp.").
.

December 12, 2018, R. 83-87, and Prosa subsequently requested a hearing before an Administrative Law Judge ("ALJ"), R. 90. On November 25, 2019, Prosa appeared with counsel at a video hearing and gave testimony. R. 29-61. In a decision dated December 27, 2019, the ALJ found that Prosa was not disabled. R. 9-28. Prosa filed a request for review by the Appeals Council, and on December 11, 2020, the Appeals Council denied the request. R. 1-3. Plaintiff subsequently filed an action in district court on February 13, 2021, challenging the SSA's determination.

On August 24, 2022, the district court issued a decision remanding Prosa's case to the SSA. See Prosa v. Comm'r of Soc. Sec., 2022 WL 3648065 (S.D.N.Y. Aug. 5, 2022), adopted by 2022 WL 3646209 (S.D.N.Y. Aug. 24, 2022). The decision was based on the fact that while the ALJ had found that the opinion rendered by physical therapist Joanna Gumtang — finding that Prosa was only capable of up to 7 hours of work per day — was "generally persuasive," the ALJ formulated a residual functional capacity ("RFC") that provided that Prosa was capable of performing work on a full-time basis. See Prosa, 2022 WL 3648065, at *6 ("In light of the ALJ's finding that PT Gumtang's assessment was more persuasive, the assessment that Plaintiff could not work 8 hours a day should have governed that aspect of Plaintiff's RFC as determined by the ALJ."). The court found that this unexplained contradiction between the medical evidence and the RFC required that the case be remanded back to the SSA.

After the case was remanded, a supplemental hearing was held on May 15, 2023. R. 1058-1070. On June 15, 2023, the ALJ issued a written decision finding that Prosa was not disabled. R. 1035-1057. On October 9, 2023, Prosa filed the instant action. See Complaint, filed Oct. 9, 2023 (Docket # 1).

B. <u>The Two Hearings Before the ALJ</u>

Prosa appeared with counsel at the November 25, 2019 hearing before the ALJ, which was held by video. <u>See</u> R. 30-32. Also present and testifying was vocational expert ("VE") Linda Stein. R. 30. In brief, Prosa testified that she stopped working in January 2015 following an injury she suffered on the job as a train operator for the Metropolitan Transportation Authority. R. 35. The accident at work injured her left knee, but sometime thereafter her right knee, hip, and back began to hurt as well. R. 36-37. Prosa underwent two surgeries that somewhat improved her conditions but failed to help her "get anywhere near back to where [she] was before [she] was injured initially." R. 37-38. Prosa was then asked about her limitations during the disability period, which started in January 2015 and continued until February 2019, when Prosa returned to full-time work. R. 34, 37-40. Prosa testified that she had difficulties sitting, standing, and performing tasks around the house. R. 38-39. In regard to her employment, Prosa testified that she was currently working at a call center for a healthcare company. R. 40. During examination by the ALJ, Prosa testified that she was able to drive for up to 20 minutes and sit for an hour if required. R. 48-49.

Following the district court's decision remanding Prosa's case back to the SSA, another hearing was held on May 15, 2023, in which Prosa appeared, with counsel, via telephone. R. 1058-1070. VE Richard Hall was also present and testified. R. 1058. The ALJ began by stating that the basis for the remanding of Prosa's case was to consider the weight given to the opinions rendered by two medical experts, R. 1063, Dr. Angelotti and PT Gumtang, <u>see</u> R. 1101-1103; <u>Prosa</u>, 2022 WL 3648065, at *6. Prosa's counsel agreed that no further testimony from Prosa needed to be taken. R. 1066. The VE testified that an individual with a similar age, education, and work experience, but who was limited, <u>inter alia</u>, to a sedentary exertional level

and was limited to sitting for only one hour before having to stand up for one to two minutes was able to perform Prosa's past work as a "medical secretary." R. 1068. However, the VE testified that if Prosa was limited to standing for two hours and sitting for five hours in an eight-hour workday, she would be unable to perform her past work. R. 1068-1069.

C. The Medical Evidence

Both Prosa and the Commissioner have provided detailed summaries of the relevant medical evidence. See Mem. at 5-12; Opp. at 2-14. The Court directed the parties to specify any objections they had to the opposing party's summary of the record. See Scheduling Order, dated Dec. 12, 2023 (Docket # 10). The Commissioner agreed with Prosa's summary of the record but sought to add some additional factual matter related to some of the daily activity Prosa had reported to two medical professionals, Drs. Figueroa and Jenouri. See Opp. at 14. In particular, the Commissioner highlighted that Prosa, on May 15, 2018, told Dr. Figueroa that she cooked five to six times per week, did not clean, did some laundry, and went shopping for a few items, and on November 27, 2018, Prosa told Dr. Jenouri that she cooked five times per week, cleaned and did laundry once a week, cared for her child, and showered and dressed every day. See id. Accordingly, we adopt the parties' summaries of the medical evidence as accurate and complete for the purposes of the issues raised in this action. We discuss the medical evidence pertinent to the adjudication of the instant case in section III below.

D. The ALJ's Decision

The ALJ denied Prosa's application on June 15, 2023. R. 1038-1051. In doing so, the ALJ determined that Prosa "was not under a disability within the meaning of the Social Security Act from January 1, 2015," the alleged onset date, "through the date of this decision." R. 1038-1039. Because the ALJ found that Prosa had "engaged in substantial gainful activity . . . from

February 4, 2019 through the present," the ALJ only considered Prosa's alleged impairments as they related to the "closed period of disability from January 1, 2015 to February 4, 2019." R. 1040. The ALJ found that Prosa "had the following severe impairments: left and right knee derangement and obesity." R. 1041. The ALJ found that Prosa's other alleged physical impairments — lower back and hip pain — were "not medically determinable impairments during the period at issue," and that Prosa's alleged mental impairment — adjustment disorder — did "not cause more than minimal limitation in [Prosa's] ability to perform basic mental work activities." R. 1041. In regard to the mental impairments, the ALJ found, relying on Prosa's limited history of mental health treatment and the lack of any evidence in the record suggesting more severe symptoms, that Prosa had mild limitations in the four broad functional areas outlined in 20 CFR, Part 404, Subpart P, Appendix 1. R. 1041-1042. The ALJ concluded that Prosa's mental impairment was "non-severe" because it "causes no more than 'mild' limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities." R. 1042. The ALJ also found that Prosa, during the time period at issue, "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." R. 1042.

The ALJ then assessed Prosa's RFC for the relevant period. See R. 1043-1050. The ALJ found that Prosa had the capacity

> to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant can never climb ladders, ropes or scaffolds and can occasionally climb ramps and stairs. She was able to occasionally balance, stoop, kneel, crouch, or crawl. She was able to occasionally operate foot controls with the left lower extremity. She should avoid hazards such as moving machinery. She required a sit/stand option, defined as that after one hour of sitting she would be able to stand for one to two minutes before sitting down, not being off-task.

R. 1043.

In making this RFC assessment, the ALJ "considered all symptoms and the extent to which these symptoms [could] reasonably be accepted as consistent with the objective medical evidence and other evidence," and "considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c." R. 1043. The ALJ considered the numerous medical opinions in the record. Of most significance to the ALJ's RFC determination were the opinions Drs. Hudak, Glassman, Angelotti, Figueroa, and Jenouri. See R. 1047-1049. All of these opinions to a substantial degree supported the ALJ's conclusion that Prosa was capable of performing sedentary work on a full-time basis during the period of disability. Two opinions in the record, those rendered by Dr. Hearns and PT Gumtang, suggested limitations that were more severe than the RFC provided. R. 1049-1050. Nonetheless, the ALJ discounted these opinions, primarily on the basis that they were inconsistent with other evidence in the record and had limited evidentiary support in the professionals' clinical findings. See R. 1047-1049.

The ALJ found that Prosa was "capable of performing past relevant work as a medical secretary." R. 1050. Having determined that Prosa could perform her past work, the ALJ did not consider other jobs Prosa could perform in the national economy. Thus, the ALJ ruled that Prosa "has not been under a disability, as defined in the Social Security Act, from January 1, 2015, through the date of this decision." R. 1050.

II. LEGAL STANDARD

A. Scope of Judicial Review

A court reviewing a final decision by the Commissioner "is limited to determining whether the [Commissioner's] conclusions were supported by substantial evidence in the record

and were based on a correct legal standard."  Selian v. Astrue, 708 F.3d 409, 417 (2d Cir. 2013)

(per curiam) (punctuation omitted); accord Greek v. Colvin, 802 F.3d 370, 374-75 (2d Cir. 2015)

(per curiam); see generally 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social

Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  "Failure

to apply the correct legal standard constitutes reversible error, including, in certain

circumstances, failure to adhere to the applicable regulations."  Douglass v. Astrue, 496 F. App'x

154, 156 (2d Cir. 2012) (quoting Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008)).

"If the reviewing court is satisfied that the ALJ applied the correct legal standards, then

the court must 'conduct a plenary review of the administrative record to determine if there is

substantial evidence, considering the record as a whole, to support the Commissioner's

decision.'"  Ayala v. Kijakazi, 620 F. Supp. 3d 6, 14 (S.D.N.Y. 2022) (quoting Brault v. Soc.

Sec. Admin., Comm'r, 683 F.3d 443, 447 (2d Cir. 2012) (per curiam).  Substantial evidence is

"more than a mere scintilla."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol.

Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); accord Greek, 802 F.3d at 375; Burgess v.

Astrue, 537 F.3d 117, 127-28 (2d Cir. 2008).  "It means — and means only — such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion."  Biestek v.

Berryhill, 587 U.S. 97, 103 (2019) (punctuation omitted).  The "threshold for such evidentiary

sufficiency is not high."  Id.

As such, it is not a reviewing court's function "to determine de novo whether [a claimant]

is disabled."  Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998) (punctuation omitted); accord

Cage v. Comm'r of Soc. Sec., 692 F.3d 118, 122 (2d Cir. 2012), cert. denied, 570 U.S. 919

(2013).  "Even where the administrative record may also adequately support contrary findings on

particular issues, the ALJ's factual findings must be given conclusive effect so long as they are

supported by substantial evidence." <u>Genier v. Astrue</u>, 606 F.3d 46, 49 (2d Cir. 2010) (per curiam) (punctuation omitted).  In other words, "[i]f the reviewing court finds substantial evidence to support the Commissioner's final decision, that decision must be upheld, even if substantial evidence supporting the claimant's position also exists." <u>Johnson v. Astrue</u>, 563 F. Supp. 2d 444, 454 (S.D.N.Y. 2008) (citing <u>Alston v. Sullivan</u>, 904 F.2d 122, 126 (2d Cir. 1990)). The Second Circuit has held that "[t]he substantial evidence standard means once an ALJ finds facts, [a court] can reject those facts only if a reasonable factfinder would <u>have to conclude otherwise</u>." <u>Brault</u>, 683 F.3d at 448 (emphasis in original, punctuation omitted).  "The role of the reviewing court is therefore quite limited and substantial deference is to be afforded the Commissioner's decision." <u>Johnson</u>, 563 F. Supp. 2d at 454 (punctuation omitted).

　　B. <u>Standard Governing Evaluation of Disability Claims by the Agency</u>

　　The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); <u>see</u> <u>id.</u> § 1382c(a)(3)(A).  A person will be found to be disabled only if it is determined that her "impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

　　To evaluate a Social Security claim, the Commissioner is required to examine: "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's

educational background, age, and work experience." Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983) (per curiam); accord Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (per curiam); Aponte v. Kijakazi, 692 F. Supp. 3d 257, 264 (S.D.N.Y. 2023).

Regulations issued pursuant to the Social Security Act set forth a five-step process that the Commissioner must use in evaluating disability claims. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); see also Burgess, 537 F.3d at 120 (describing the five-step process). First, the Commissioner must determine whether the claimant is currently engaged in any "substantial gainful activity." 20 C.F.R. 404.1520(a)(4)(i), 416.920(a)(4)(i). Second, if the claimant is not engaged in substantial gainful activity, the Commissioner must decide if the claimant has a "severe medically determinable physical or mental impairment," id. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii), which is an impairment or combination of impairments that "significantly limits" the claimant's "physical or mental ability to do basic work activities," id. §§ 404.1520(c), 416.920(c). Third, if the claimant's impairment is severe and is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, or is equivalent to one of the impairments listed, the claimant must be found to be disabled regardless of her age, education, or work experience. See id. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d). Fourth, the Commissioner must determine if the claimant is unable to perform past relevant work, id. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv), and fifth, if the claimant cannot, the Commissioner must decide if the claimant's residual functional capacity, in addition to her age, education, and work experience, permits the claimant to do other work, id. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant cannot perform other work, she will be deemed disabled. Id. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). The claimant bears the burden of proof on all steps save the final one — that

is, on all steps aside from proving that there is other work the claimant can perform. <u>See</u>

<u>Poupore v. Astrue</u>, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam).

III. <u>DISCUSSION</u>

 Prosa seeks remand based on the three purported errors in the ALJ's decision. First, Prosa argues that the ALJ's RFC determination was not supported by substantial evidence. <u>See</u> Mem. at 15-18. Second, Prosa argues that the ALJ erred in finding her mental impairment "non-severe" at step two of the analysis. <u>See id.</u> at 18-19. Finally, Prosa argues that the ALJ failed to develop the administrative record, particularly as it related to her alleged mental impairment. <u>See id.</u> at 19-20. We address each argument in turn.

 A. <u>Substantial Evidence</u>

 Prosa argues that the ALJ's RFC determination was not supported by substantial evidence. <u>See</u> Mem. at 15-18. While Prosa makes several arguments that the Court does not find persuasive, the Court ultimately agrees with Prosa's argument that the RFC's less-restrictive restriction on kneeling is insufficiently explained by the ALJ and unsupported by substantial evidence.

 The ALJ concluded that Prosa was capable of sedentary work. R. 1043. The numerous medical opinions in the record — including the opinions rendered by Drs. Hudak, Glassman, Figueroa, Jenouri, and Angelotti — provide substantial support for the majority of the identified restrictions in the RFC. <u>See</u> R. 1048-1049. In particular, these opinions all provide support for the sitting/standing restriction, which was the basis for the earlier district court decision remanding the case to the SSA. <u>See, e.g.</u>, R. 910 (Dr. Jenouri opining that Prosa had only moderate restrictions in walking and standing for long periods and no restrictions in sitting); <u>see</u> <u>Prosa</u>, 2022 WL 3648065, at *4 ("In light of the ALJ's finding that PT Gumtang's assessment

was more persuasive, the assessment that Plaintiff could not work 8 hours a day should have governed that aspect of Plaintiff's RFC as determined by the ALJ.").

Even though substantial evidence supports portions of the RFC, substantial evidence does not support the ALJ's determination that Prosa can "occasionally . . . kneel." R. 1043. In reaching the RFC, the ALJ found the opinions of Dr. Glassman and Dr. Jenouri persuasive and the opinion of Dr. Hudak "generally persuasive." R. 1048-1049. However, Drs. Glassman and Hudak both opined that Prosa should not perform a job that required kneeling. See R. 646 (Dr. Hudak opining that he "would recommend no kneeling on the left knee and no prolonged walking"); R. 655 (Dr. Hudak opining that he "would recommend no prolonged walking and no kneeling on the left knee"); R. 669 (Dr. Hudak "recommend[ing] no kneeling on the left knee and no prolonged weight bearing or walking"); R. 664 (Dr. Glassman recommending "no kneeling on the left knee"). While Dr. Jenouri's opinion did not identify any limitations in Prosa's ability to kneel, see R. 908-11, the ALJ did not provide any analysis as to why the more restrictive limitations articulated by Drs. Hudak and Glassman were rejected.

This lack of explanation is made somewhat more perplexing by the fact that the ALJ's previous RFC — in the decision remanded in the previous federal court action, see Prosa, 2022 WL 3648065, at *6 — included an absolute restriction on kneeling. See R. 17 ("I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant can never climb ladders, ropes, or scaffolds, balance, stoop, kneel, crouch, or crawl.").

"[A]n ALJ may not selectively favor medical opinions, or portions of an opinion, that support [her] opinion and ignore opinions or facts that do not." Marcano v. Comm'r of Soc. Sec., 2021 WL 5315703, at *19 (S.D.N.Y. Nov. 16, 2021), adopted by 2022 WL 253083

(S.D.N.Y. Jan. 26, 2022).  While "[it] is entirely proper for the ALJ to only credit portions of medical source opinions, or weigh different parts of the same opinion differently," "the ALJ should provide good reasons for doing so."  Marcano, 2021 WL 5315703, at *19-20 (citation and quotation marks omitted); accord Martinez v. Kijakazi, 2023 WL 8361356, at *9 (S.D.N.Y. Dec. 4, 2023), adopted by 2024 WL 422291 (S.D.N.Y. Jan. 15, 2024); Guadalupe v. Comm'r of Soc. Sec., 2022 WL 874722, at *2 (S.D.N.Y. Mar. 24, 2022).  Here, the ALJ failed to provide any reason why the RFC's restrictions on kneeling are less restrictive than those identified by the medical opinions the ALJ found persuasive.

The Commissioner appears to make two arguments in response, neither of which fully address the abovementioned discrepancy directly.  First, the Commissioner argues that the fact that Prosa interprets Dr. Hudak's medical opinions as supporting a more restrictive RFC is "of no moment" since Prosa "fails to show that the ALJ was compelled to find a more restrictive RFC" based on Dr. Hudak's opinion and the record as a whole.  Opp. at 29 (emphasis in original).  This argument misses the point.  Prosa is not arguing that a vague modifier, such as "mild restrictions," supports a more restrictive RFC — as was the case in one of the Commissioner's cited cases.  See Lynette W. v. Comm'r of Soc. Sec., 2021 WL 868625, at *4 (W.D.N.Y. Mar. 9, 2021) ("[W]hile it is true that nonsevere impairments and 'mild' limitations can cause functional restrictions, Plaintiff does not articulate why the ALJ was compelled to interpret Dr. Ransom's opinion in that manner . . . .") (internal citations and emphasis omitted).  Here, medical experts unequivocally opined that Prosa should not kneel.  See, e.g., R. 646 (Dr. Hudak opining that he "would recommend no kneeling on the left knee and no prolonged walking").  In other words, this is not an instance where deference to an ALJ is warranted in light of multiple reasonable interpretations of a medical finding.  Rather, this is an instance where an ALJ failed to provide

any reasoning supporting her decision to assign a less-restrictive RFC than was suggested by multiple opinions in the record that the ALJ found persuasive.

The Commissioner also argues that "[a]n ALJ's conclusion does not need to track any opinion, and an ALJ is entitled to evaluate the evidence to make an RFC finding consistent with the record as a whole."  Opp. at 30-31.  As discussed above, we agree that an ALJ's RFC determination need not track a single medical opinion perfectly.  However, where the ALJ departs from certain portions of that opinion — especially where, as is the case here, multiple medical opinions the ALJ found persuasive provide for greater restrictions — the ALJ must provide some reasoning for this departure and not simply ignore that portion of the opinion.  See Telesco v. Comm'r of Soc. Sec., 577 F. Supp. 3d 336, 357 (S.D.N.Y. 2021) ("[A]n ALJ may not selectively favor medical opinions, or portions of an opinion, that support his opinion and ignore opinions or facts that do not.").

The vocational expert was specifically asked to assume that the claimant could "occasionally . . . kneel," R. 1068, and the Government makes no argument that this error was harmless.  Accordingly, because the ALJ failed to provide any reason for rejecting certain portions of medical opinions she found persuasive with regard to kneeling, remand is warranted.  See Labonte v. Berryhill, 2017 WL 1546477 at *3 (W.D.N.Y. May 1, 2017) ("[W]hen an ALJ adopts only portions of a medical opinion he or she must explain why the remaining portions were rejected."); Agron v. Colvin, 2016 WL 4510432, at *2 (W.D.N.Y. Aug. 26, 2016) ("While . . . an ALJ is not obligated to reconcile explicitly every conflicting shred of medical testimony, the ALJ must explain why a medical opinion was not adopted when his RFC assessment conflicts with that medical source opinion — especially where, as here, the ALJ gave great

evidentiary weight to the opinion undermining his RFC finding.") (citations, internal quotation marks and alterations omitted).

    B.  <u>Step-Two Finding</u>

    Prosa's next argument is that the ALJ erred at step two of the five-step process in finding that Prosa's mental impairment of adjustment disorder was non-severe during the disability period.  <u>See</u> Mem. at 18-19.  Prosa's analysis on this point is cursory, merely asserting that "Prosa's mental impairments have a significant effect on her abilities" and that the ALJ did not provide "any meaningful discussion of her findings" that Prosa's mental impairment causes no more than mild limitations in the four key areas of functioning outlined in 20 C.F.R. § 404.1520a(d).  <u>See</u> Mem. at 18-19.

    We disagree.  In reaching her conclusion, the ALJ considered the medical findings of Dr. Stack, the psychologist that Prosa's treating provider, Dr. Hearns, referred her to.  R. 1041-1042; <u>see</u> R. 930-32 (February 2016 psychological evaluation and consultation report); R. 933-36 (March 2016 psychological evaluation and consultation report).  The ALJ highlighted Dr. Stack's observation that "[t]here was no evidence of a thought disorder in [Prosa's] presentation."  R. 930.  While Dr. Stack ultimately diagnosed Prosa with "adjustment disorder with mixed anxiety and depressed mood, chronic," <u>see</u> R. 932, 936, the ALJ noted that "there is no evidence of record that the claimant continued to receive any mental health treatment for her reported symptoms" and "has not been prescribed any psychotropic medications for depression or anxiety," R. 1042.  The ALJ also noted that Prosa had testified at the initial ALJ hearing that while she saw a therapist for a period of time following her accident, she was no longer seeing a therapist and her mental health was "better" than it was following the accident.  R. 42.  The lack of any sustained mental health treatment and medical evidence suggesting Prosa's mental

impairment is responsible for more severe symptoms could permissibly lead the ALJ to conclude as she did. See Marrero v. O'Malley, 2024 WL 1435923, at *15 (S.D.N.Y. Feb. 14, 2024) ("The ALJ was permitted to consider Plaintiff's failure to follow through on the referral and obtain treatment as part of the decision not to credit Plaintiff's statements regarding the extent of her limitations due to her mental impairment."), adopted by 2024 WL 1328382 (S.D.N.Y. Mar. 28, 2024); Navan v. Astrue, 303 F. App'x 18, 20 (2d Cir. 2008) ("[The plaintiff's] claims of total disability were undermined by his failure to seek regular treatment for his allegedly disabling condition."); Netter v. Astrue, 272 F. App'x 54, 56 (2d Cir. 2008) (conservative treatment cited to support conclusion that claimant not disabled); see also Snyder v. Comm'r of Soc. Sec., 2023 WL 1943108, at *3 (2d Cir. Feb. 13, 2023) (An ALJ "is entitled to rely not only on what the record says, but also on what it does not say. After all, it is the claimant's burden to prove a more restrictive RFC, and a lack of supporting evidence on a matter for which the claimant bears the burden of proof, particularly when coupled with other inconsistent record evidence, can constitute substantial evidence supporting a denial of benefits.") (cleaned up) (summary order).

Accordingly, the ALJ did not err in finding Prosa's mental impairments non-severe at step two of the analysis.

C. Failure to Develop the Record

Prosa's final argument is that the ALJ failed to adequately develop the administrative record. See Mem. at 19-20. It is well established that "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." Rosa v. Callahan, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (citation omitted); accord Scully v.

Berryhill, 282 F. Supp. 3d 628, 636 (S.D.N.Y. 2017); Foster v. Comm'r of Soc. Sec. Admin.,

692 F. Supp. 3d 105, 113 (S.D.N.Y. 2023).

      Here, Prosa argues that the ALJ "failed to develop the administrative record, including by

obtaining Ms. Prosa's mental health treatment records and/or ordering a psychological

consultative examination."  Mem. at 20.  We disagree for several reasons.  First, Prosa's

testimony before the ALJ during the initial hearing did not suggest that there was further need to

develop the record.  For example, Prosa testified that she only briefly saw a therapist for her

mental impairment, had never been on any psychiatric medication, and was not in fact receiving

treatment at the time of the hearing.  See R. 42.  Furthermore, Prosa testified that her symptoms

had improved when compared to the symptoms she suffered directly after her accident.  See R.

42 ("right now it's better than it was after, you know, going through the process and getting

better").  Second, the administrative record contained a medical opinion related to Prosa's mental

impairments, which did not suggest any severe symptoms.  See R. 930-36.  Finally, when asked

whether the administrative record was complete, Prosa's counsel indicated that it was in fact

complete.  R. 34.  Under such circumstances, the Court cannot find that Prosa has identified any

"obvious gaps" in the record warranting remand.  See Mangual v. Comm'r of Soc. Sec., 600 F.

Supp. 3d 313, 326 (S.D.N.Y. 2022) ("Because nothing [plaintiff] has argued suggests that this

constitutes a 'glaring gap' in the evidence, and because [plaintiff]'s counsel represented to the

ALJ that the record was complete, we discern no error in the ALJ's development of the record.");

Jaquish v. Comm'r of Soc. Sec., 2017 WL 3917019, at *9 (N.D.N.Y. Sept. 6, 2017) ("The duty

to assist in developing the record does not go so far as to require the ALJ to independently search

for every available record in existence, particularly where a claimant's representative expresses a

belief that the record is complete and there was no obvious or glaring gap in the evidence that would have alerted the ALJ that the representative was incorrect.").

Conclusion

For the foregoing reasons, Prosa's motion (Docket # 13) is granted. Pursuant to 42 U.S.C. § 405(g), this matter is remanded to the Commissioner for further proceedings consistent with this Opinion and Order. The Clerk of Court is requested to enter judgment.

Dated: September 17, 2024
      New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge